1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LINDA D. BLANKENSHIP,           )   No. EDCV 06-0713-SS
                                )
            Plaintiff,          )
                                )   MEMORANDUM DECISION AND ORDER
        v.                      )
                                )
MICHAEL J. ASTRUE,              )
Commissioner of the Social      )
Security Administration,        )
                                )
            Defendant.          )
_____ )

    Plaintiff brings this action seeking to overturn the decision of
the Commissioner of the Social Security Administration (the
"Commissioner" or the "Agency") denying her application for Supplemental
Security Income and Disability Insurance Benefits.  Alternatively, she
asks for a remand.  The parties previously consented, pursuant to 28
U.S.C. § 636(c), to the jurisdiction of the undersigned United States
Magistrate Judge.  The parties filed a "Joint Stipulation," pursuant to
this Court's case management order, on March 23, 2007.  For the reasons
stated below, the decision of the Commissioner is AFFIRMED.

\\

\\

1

2

**PROCEDURAL HISTORY**

3     Following a voluntary remand before this Court, the Appeals Council
4   remanded this case to the ALJ on March 22, 2005.  (AR 307).   In that
5   remand order, the Appeals Council noted that the prior ALJ, in 2002,
6   found that Plaintiff did not have a "severe" mental impairment.  (AR
7   306).   The ALJ relied upon the evaluation of Linda Smith, M.D.,
8   consultative psychiatrist, who found that Plaintiff did not suffer from
9   post traumatic stress disorder ("PSTD") and embellished her symptoms.
10  (Id.).

11

12     The remand order observes that subsequent to Dr. Smith's
13  evaluation, Plaintiff began receiving mental health treatment for PSTD,
14  panic attacks and depression.  Although the 2002 decision mentions this
15  evidence, the Appeals Council found that the decision did not provide an
16  adequate rationale for rejecting the diagnoses of PTSD and major
17  depressive disorder.  (Id.).  Moreover, additional evidence submitted to
18  the Appeals Council indicated that Plaintiff continued to receive mental
19  health treatment into 2003.  Although the 2002 decision rejected the
20  initial health assessment of Plaintiff because it was not completed by
21  an "acceptable medical source," the Appeals Council found that it was
22  completed by a "treating source" and therefore, must be considered.
23  (Id.).
24  \\
25  \\
26  \\
27  \\
28  \\

The Appeals Council order then issued specific instructions:

Upon remand the Administrative Law Judge will:

Obtain additional evidence concerning the claimant's impairments, including a possible mental impairment, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examination and existing medical evidence (citations omitted).  The additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source statements about what the claimant can still do despite the impairment.

Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (citations omitted).

Evaluate the claimant's work activity subsequent to the alleged onset date to determine whether it constitutes substantial gainful activity.

(AR 307).

In response to the remand, the agency permitted Plaintiff to submit new evidence (AR 324), and sent Plaintiff for two additional consultative examinations, one with an internist and another psychiatric

evaluation with Dr. Smith.   (AR 449 & 458).   In addition, the ALJ
retained the services of a medical expert, Dr. David Glassmire, a
psychologist, who reviewed Plaintiff's records and testified at the
hearing.   A second hearing was held on October 4, 2005, where Plaintiff
appeared with counsel and testified.   (AR 573-627).   Dr. Glassmire
reviewed the records and questioned Plaintiff at the hearing.   He stated
that its "a difficult case to provide a confident opinion on because
there's very discrepant (sic) records.   So first I'll tell you what I
think there's evidence for that I'm relatively confident with.   Is (sic)
12.04 affective disorders, major depressive disorder.   And under 12.06
anxiety disorders.   She's reporting symptoms of PTSD, post-traumatic
stress disorder to me, so I would say that's another one that I would
list.   Those are the two diagnoses."   (AR 586).   Dr. Glassmire testified
that both diagnoses were severe.   (Id.).

    In his testimony, Dr. Glassmire discussed the two consultative
evaluations performed by Dr. Linda Smith, which he found contrasted
significantly with the treatment records, although he also found the
treatment records were very limited.   (AR 587-588).   Dr. Glassmire
reviewed the medical records from Drs. Whitebread and Antonini, where
"they had, over a number of occasions, diagnosed her with post-traumatic
stress disorder and major depressive disorder."   (AR 588).   Finally, he
also considered the January 24, 2002 evaluation of Ms. Dudley, an "MFT"
("marriage and family therapist") intern, who gave Plaintiff a GAF of
30.   (AR 588-589).   Dr. Glassmire continued his testimony by summarizing
the treatment records from 2002 to 2003.
\\
\\

4

1    After completing his review and after questioning Plaintiff, Dr.
2    Glassmire testified that he believed Plaintiff's restrictions of
3    activities of daily living were "mild." (AR 590). He found that
4    Plaintiff experienced only moderate difficulties maintaining
5    concentration, persistence, or pace and two episodes of decompensation.
6    (Id.). Dr. Glassmire found her current restrictions of daily living,
7    social functioning, maintaining concentration, etc., all to be mild.
8    (AR 591). He found no episodes of decompensation in the current period.
9    (Id.). Dr. Glassmire observed that there were significant
10   inconsistencies in Plaintiff's presentation to Dr. Smith, where she was
11   apparently smiling and laughing during the examination, and during her
12   presentation to Dr. Glassmire, where she was muted and quiet. (AR 592).
13   In Dr. Glassmire's opinion, the inconsistency in her presentation was
14   not due to the course of her illness. (Id.).

15

16                    **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

17

18   To qualify for disability benefits, a claimant must demonstrate a
19   medically determinable physical or mental impairment that prevents him
20   from engaging in substantial gainful activity[1] and that is expected to
21   result in death or to last for a continuous period of at least twelve
22   months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42
23   U.S.C. § 423(d)(1)(A)). The impairment must render the claimant
24   incapable of performing the work he previously performed and incapable
25   of performing any other substantial gainful employment that exists in

26   _____

27        [1] Substantial gainful activity means work that involves doing
     significant and productive physical or mental duties and is done for pay
28   or profit. 20 C.F.R. §§ 404.1510, 416.910.

                                        5

the national economy.   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

    To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.   20 C.F.R. §§ 404.1520, 416.920.   The steps are:


    (1)   Is the claimant presently engaged in substantial gainful
          activity?  If so, the claimant is found not disabled.  If
          not, proceed to step two.
    (2)   Is the claimant's impairment severe?   If not, the
          claimant is found not disabled.  If so, proceed to step
          three.
    (3)   Does the claimant's impairment meet or equal one of a
          list of specific impairments described in 20 C.F.R. Part
          404, Subpart P, Appendix 1?  If so, the claimant is found
          disabled.  If not, proceed to step four.
    (4)   Is the claimant capable of performing his past work?  If
          so, the claimant is found not disabled.  If not, proceed
          to step five.
    (5)   Is the claimant able to do any other work?  If not, the
          claimant is found disabled.  If so, the claimant is found
          not disabled.

<u>Tackett</u>, 180 F.3d at 1098-99; <u>see also</u> <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing <u>Tackett</u>); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**THE ALJ'S DECISION**

On March 23, 2006, Administrative Law Judge John W. Belcher (the "ALJ") issued his decision finding Plaintiff not disabled and denying

---

[2]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

benefits.   First, the ALJ determined whether Plaintiff had engaged in substantial gainful activity after the date of alleged onset of disability.  (AR 284).  Plaintiff earned $11,795 in 2000 and $ 7,008 in 2001 as a part-time caretaker for her grandson.  (Id.).  The ALJ found this work to be an unsuccessful work attempt and did not consider it to be substantial gainful activity.  (Id.).

The ALJ found that Plaintiff had the following severe impairments: obesity, degenerative joint disease and degenerative disc disease of the lumbar spine, status post left hand fracture, and degenerative joint disease of the bilateral knees.  In addition, he found that, for the period from December 2001 through February 2003, the claimant had the severe mental impairments of depression and anxiety.  (AR 284).  However, for the period prior to December 2001, and for the period after February 2003 to the present, the claimant's depression and anxiety were not severe in that there was no evidence in the record to show the presence of a significant mental limitation or of a severe mental impairment.  (AR 285).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met a listing.  (AR 285).  He further found that Plaintiff has the residual functional capacity (RFC) to perform sedentary work.  Specifically, the ALJ found that Plaintiff is able to lift and/or carry 10 pounds frequently and less than 10 pounds occasionally.  Out of an 8-hour workday, Plaintiff is able to stand and/or walk for two hours with the use of a cane, and sit for 6 hours, but she must be able to change positions at will.  Plaintiff is able to climb stairs, balance, bend, kneel, stoop, crouch, and crawl,

8

occasionally and she is precluded from climbing ladders, ropes and scaffolds. Plaintiff should avoid concentrated exposure to fumes, etc., and could not work around hazardous machinery. She must work in an air conditioned environment and was subject to further restrictions involving her hands and feet. (AR 285). Evaluating her mental restrictions, the ALJ found that, for the period prior to December 2001 and after February 2003, she was precluded from work requiring safety operations, hypervigilence, high production work, high quota work, or rapid assembly line work. Plaintiff should not work alone or in isolation. For the period from December 2001 to February 2003, Plaintiff was precluded from public contact but needed group contact. (AR 285).

The ALJ incorporated by reference the prior discussion of the medical evidence from the September 19, 2002 decision. (Id.). In discussing Plaintiff's mental health, the ALJ made the following observations:

Regarding the claimant's mental health, the claimant has [a] history of depression and anxiety treated with psychotropic medication and that for the period from December 2001 to February 2003, the claimant's condition deteriorated slightly due to increased symptoms of depression and anxiety as a result of an assault episode in 1990, as well as hospitalization for depression and suicide attempt in October 2002. (internal citations omitted). Medical records submitted in connection with the subsequent claim show the claimant was treated and hospitalized from October 3, 2002

1   through October 7, 2002, depression with suicide attempt by
2   overdose.   (internal citation omitted).   Mental status
3   examination showed sensorium, orientation and memory was
4   intact.   Attitude was cooperative, etc.   The claimant was
5   diagnosed and treated for depressive disorder not otherwise
6   specified.

7

8   (AR 288).

9

10   The ALJ reviewed the December 2001 to February 2003 mental health
11   records, finding that Plaintiff was treated favorably with Paxil and
12   Serzone with no indication for extensive psychiatric treatment.   (AR
13   288).   Further treatment notes show that Plaintiff was treated for
14   depression generally with psychotropic medication from April 2, 2003
15   through July 29, 2003.   However, by the end of July 2003, the records
16   reflect that Plaintiff failed to keep her appointments and her case was
17   closed.   (Id.).

18

19   The ALJ summarized the reports of consultative psychiatrist Linda
20   Smith, who observed that Plaintiff had a difficult time staying serious
21   during the exam and laughed on and off.   (Id.).   Dr. Smith found
22   Plaintiff to be "feigning" the entire evaluation and concluded that
23   Plaintiff was not impaired in her ability to work by any mental
24   disorder.   (Id.).

25

26   Next, the ALJ reviewed the testimony of medical expert Dr. David
27   Glassmire who found that while Plaintiff has major depressive disorder
28   and post traumatic stress disorder, she has neither impairment at the

10

1  listing level severity.  As described above, Dr. Glassmire generally
2  found mild restrictions of activities of daily living and social
3  functioning.  The ALJ stated that he "accept[s] and adopt[s] the
4  assertions of the medical expert and [they] are given significant
5  weight.  [They are] consistent with the overall medical evidence of
6  record and there is no convincing reason to reject [the medical
7  expert's] opinion."  (Id.).

8

9      In evaluating Plaintiff's credibility, the ALJ found that
10 "claimant's medically determinable impairments could reasonably be
11 expected to produce the alleged symptoms, but that the claimant's
12 statements concerning the intensity, duration, and limiting effects of
13 these symptoms are not entirely credible."  (AR 289).

14

15     Finally, the ALJ found that Plaintiff could not return to her past
16 relevant work.  However, after testimony by a vocational expert, the ALJ
17 concluded that Plaintiff could perform certain jobs existing in
18 significant numbers in the national economy.  As such, Plaintiff was not
19 under a "disability" as defined in the Social Security Act, from August
20 7, 1999 through the date of the decision.  (AR 291).

21

22                          **STANDARD OF REVIEW**

23

24     Under 42 U.S.C. § 405(g), a district court may review the
25 Commissioner's decision to deny benefits.  The court may set aside the
26 Commissioner's decision when the ALJ's findings are based on legal error
27 or are not supported by substantial evidence in the record as a whole.
28 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing

                                   11

1  <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th
2  Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

3

4  "Substantial evidence is more than a scintilla, but less than a
5  preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>,
6  112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a
7  reasonable person might accept as adequate to support a conclusion."
8  <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279). To
9  determine whether substantial evidence supports a finding, the court
10  must "'consider the record as a whole, weighing both evidence that
11  supports and evidence that detracts from the [Commissioner's]
12  conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2
13  F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support
14  either affirming or reversing that conclusion, the court may not
15  substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d
16  at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

17

18                                **DISCUSSION**

19

20  Plaintiff contends the ALJ erred for a number of reasons. First,
21  she claims that the ALJ failed to properly comply with the Order of the
22  Appeals Council requiring him to properly consider the clinical
23  assessment of Julie Kay Dudley, MSW. (Jt. Stip. at 3). Second,
24  Plaintiff complains that the ALJ's credibility findings were erroneous.
25  Finally, Plaintiff argues that the ALJ failed to properly consider the
26  type, dosage, effectiveness, and side effects of Plaintiff's

27

28

1   medications.   (<u>Id</u>.).   The Court disagrees with all of Plaintiff's
2   contentions and instead finds that the decision of the Commissioner must
3   be AFFIRMED.

5   **A.   The ALJ Properly Evaluated The Clinical Assessment of Julie**
6   **Kay Dudley, MSW**

8        Plaintiff contends that the ALJ did not give proper weight to the
9   clinical assessment of Julie Kay Dudley, MSW.   (Jt. Stip. at 4-6).   The
10  assessment is reflected in an 8-page, "fill-in the blanks" type form,
11  which Ms. Dudley apparently completed after Plaintiff's initial visit to
12  her clinic on April 2, 2003.   (AR 439-445,448).   Other than this April
13  2, 2003 visit, the records show no additional treatment by Ms. Dudley,
14  although Plaintiff made one or two more visits to the clinic in April
15  2003.   (AR 446-47).   The records show that the last "documented client
16  contact" with Plaintiff occurred on May 8, 2003 and that her case was
17  closed because "clt. no show for subsequent contact." (AR 438).   In the
18  section of the discharge form entitled "Last Known Condition and Status
19  of Problems Treated," the psychologist wrote: "Assessment only –
20  Depressed." (AR 438).   Thus, it appears the entire contact Plaintiff
21  had with Ms. Dudley was on one occasion, i.e., her initial visit on
22  April 2, 2003.

24       Where the treating doctor's opinion is not contradicted by another
25  doctor, it may be rejected only for "clear and convincing" reasons.
26  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended).   Even
27  if the treating physician's opinion is contradicted by another doctor,
28  the ALJ may not reject this opinion without providing specific,

13

legitimate reasons, supported by substantial evidence in the record. Id.  The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  The ALJ may reject a treating physician's opinion in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  See Matney, 981 F.2d at 1019.

Ms. Dudley's assessment reflects only a one-time brief evaluation of Plaintiff and not an on-going treatment relationship.  Although the Appeals Council order suggested that this questionnaire should be given "treating source" status, the order did not instruct the ALJ to ignore the fact that the evaluation was based solely on Plaintiff's single visit to the clinic.  The ALJ did consider and weigh the assessment,

14

commenting on the records (AR 288)[3], but then proceeded to provide a detailed analysis of all the medical records pertaining to Plaintiff's mental health.  The ALJ did not err in giving Ms. Dudley's assessment little weight, as the limited nature of the document and the absence of a lengthier treating relationship certainly diminishes the value of MSW Dudley's opinions.  See e.g. Magallanes, 881 F.2d at 751 (the ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions).

The Court questions whether the Appeals Council was correct in even elevating MSW's Dudley's records to "treating source" status.  The regulations define a treating source as:

Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.  Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the

_____

[3]   The ALJ noted as follows:  "Treatment records from Dr. Roberto Cabugao and the Department of Behavioral Health dated from April 2, 2003 through July 29, 2003, show the claimant was treated for depression generally with psychotropic medication (Exhibit 12F).  However, a clinic note dated in July 2003, (sic) noted the claimant failed to keep her scheduled appointments and her case was closed. (Ibid.)."  These records included the April 2, 2003 assessment by Ms. Dudley.

15

1   source with a frequency consistent with accepted medical
2   practice for the type of treatment and/or evaluation required
3   for your medical condition(s).  We may consider an acceptable
4   medical source who has treated or evaluated you only a few
5   times or only after long intervals (e.g., twice a year) to be
6   your treating source if the nature and frequency of the
7   treatment or evaluation is typical for your condition(s).  We
8   will not consider an acceptable medical source to be your
9   treating source if your relationship with the source is not
10  based on your medical need for treatment or evaluation, but
11  solely on your need to obtain a report in support of your
12  claim for disability.  In such a case, we will consider the
13  acceptable medical source to be a nontreating source.

14

15   20 C.F.R. § 404.1502.  Here, based upon the available evidence, it is
16  difficult to conclude that Plaintiff had a "frequent" and "ongoing"
17  treatment relationship with MSW Dudley or the clinic where she worked.
18  Even if, however, MSW Dudley's report is given treating source weight,
19  the ALJ did not expressly reject her findings.  Rather, he included such
20  findings in the overall evidence of record, as did the Medical Expert,
21  but sought further evaluation of Plaintiff to determine the extent of
22  her limitations.[4]   (See e.g. AR 287-288).   The ALJ adopted Dr.
23  Glassmire's diagnosis of major depressive disorder and post traumatic
24  stress disorder.  (AR 288 "I accept and adopt the assertions of the

25

26

27  _____

        [4]   The Court notes that MSW Dudley made notes about Plaintiff's
    symptoms, but made no findings regarding any restrictions of daily
28  living or work restrictions that Plaintiff's condition might impose on
    her.  (See AR 439-445).

16

medical expert . . "). Dr. Glassmire's diagnoses are not in conflict with MSW Dudley's evaluation. Furthermore, MSW Dudley did not opine on Plaintiff's restrictions on daily living or work. Thus, there was no true rejection of MSW Dudley's evaluation by the ALJ. Instead, Ms. Dudley's assessment was simply one more piece of the record he considered in his overall evaluation of Plaintiff.

Substantial evidence supported the ALJ's decision regarding Plaintiff's RFC and ability to work. Both Dr. Smith and Dr. Glassmire's opinions may serve as substantial evidence. Opinions of a nonexamining advisor, like Dr. Glassmire, "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Because the ALJ's decision is supported by substantial evidence, it must be affirmed.

> **B.   The ALJ Properly Rejected Plaintiff's Testimony as Not Credible**

The ALJ may reject a plaintiff's testimony if he or she makes an explicit credibility finding that is "supported by a specific, cogent reason for the disbelief." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (internal citations omitted). Unless there is affirmative evidence showing that the plaintiff is malingering, the ALJ's reasons for rejecting the plaintiff's testimony must be "clear and convincing." Lester, 81 F.3d at 834. Moreover, the ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective

17

1  medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir.
2  1991).

4       The ALJ may consider the following factors when weighing the
5  claimant's credibility: (1) her reputation for truthfulness; (2)
6  inconsistencies either in her testimony or between her testimony and her
7  conduct; (3) her daily activities; (4) her work record; and (5)
8  testimony from physicians and third parties concerning the nature,
9  severity, and effect of the symptoms of which she complains. <u>Thomas v.</u>
10 <u>Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).

12      The ALJ made the following findings regarding Plaintiff's
13 credibility:

15      After considering the evidence of record, I find that the
16      claimant's medically determinable impairments could reasonably
17      be expected to produce the alleged symptoms, but that the
18      claimant's statements concerning the intensity, duration and
19      limiting effects of these symptoms are not entirely credible.

21 The ALJ observed that Plaintiff's subjective testimony suggested that
22 she was so disabled that she required help with essentially all
23 activities of daily living. (AR 289). However, he relied on several
24 factors to reject this degree of limitation. First, he observed that
25 there were inconsistencies between her hearing testimony and what she
26 reported to the doctor during her consultative examination. (<u>Id.</u>).
27 Second, the ALJ observed that Plaintiff does, in fact, perform a range
28 of household chores ("she was able to cook, do some household chores,

gardening, drive, dress and bathe herself. . . [h]er hobbies included some sewing." Id.).  Third, he noted that she had only received routine or conservative treatment.  Fourth, he commented on the fact that she failed to go to scheduled mental health care appointments and her "case was closed" in July 2003.  (Id.).  She was not motivated to seek treatment.  All of the above represent clear and convincing reasons to reject Plaintiff's subjective pain testimony.  No remand is required on this basis.

C.  **The ALJ Properly Relied Upon Plaintiff's Testimony That She Suffered No Side Effects From Her Medications**

Plaintiff contends that the ALJ erred in failing to consider side effects from her medications.  (Jt. Stip. at 15).  Plaintiff recites from a text book about possible side effects from the medicines she is taking, but fails completely to cite to any portion of the record demonstrating that she, in fact, has suffered such side effects.  (Id.).  In fact, when asked during the hearing, while she was under oath, whether she suffered any side effects from her medicines (other than dry mouth, which she testified resulted from her diabetes medicine), she stated "Not that I know of."  (AR 607).  She subsequently added "I get shaky sometime (sic)," but offered no other testimony or evidence regarding side effects from her medications.

In the evaluation written on April 23, 2003 by Dr. Roberto Cabugao at the Department of Behavioral Health, under the section marked "evaluation of side effects," the doctor indicated that there were no

1   side effects from Plaintiff's medications.  (AR 446).  During the 2004

2   evaluation by Dr. Smith, Plaintiff informed Dr. Smith that she was

3   taking Serzone, Paxil and Trazodone, but made no mention of side

4   effects.  (AR 461).[5]

5

6        As there is no evidence in the record that Plaintiff suffers from

7   any significant side effects as a result of her medication, the ALJ's

8   decision was not in error.  See Miller v. Heckler, 770 F.2d 845, 849

9   (9th Cir. 1985) (claimant failed to meet burden of proving that an

10  impairment is disabling where he produced no clinical evidence showing

11  that his prescription narcotic use impaired his ability to work).  No

12  remand is required.

13                              **CONCLUSION**

14

15       Consistent with the foregoing, IT IS ORDERED that: (1) Plaintiff's

16  Motion for Summary Judgment is DENIED, (2) Defendant's Cross-Motion for

17  Summary Judgment is GRANTED, and (3) the decision of the Commissioner is

18  AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of the Court serve

19  copies of this Order and the Judgment herein on counsel for both

20  parties.

21

22  DATED:  September 17, 2007.

23

24                              _____/s/_____

25                              SUZANNE H. SEGAL
                                UNITED STATES MAGISTRATE JUDGE

26

27  _____

28       [5]  In Dr. Smith's 2001 evaluation, Plaintiff indicated she was not
    taking any medications.  (AR 176).